## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| **WILMIN VASQUEZ-ROSARIO** | : | |
| *Petitioner,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **KRISTI NOEM, Secretary of the U.S.** | : | **No. 25-cv-7427** |
| **Department of Homeland Security, in her** | : | |
| **official capacity; et al.** | : | |
| *Respondents.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                   **JANUARY 26, 2026**

On December 31, 2025, Petitioner Wilmin Vasquez-Rosario was arrested and detained without being afforded a bond hearing. That same day, Vasquez-Rosario filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), which challenges his mandatory detention under 8 U.S.C. § 1225(b) as unlawful. ECF No. 1. On January 8, 2026, Respondents filed a Letter Brief in response to the Petition, in which they contend that Vasquez-Rosario is subject to mandatory detention under 8 U.S.C. § 1225(b) because he was charged as an "arriving alien," rather than an "applicant[] for admission." ECF No. 6 at 1.

For the reasons stated below, the Court will **GRANT** the Petition (ECF No. 1). The Court finds that Vasquez-Rosario is not subject to mandatory detention 8 U.S.C. § 1225(b); instead, he is being detained pursuant to 8 U.S.C. § 1226(a). Accordingly, Respondents' mandatory detention of Vasquez-Rosario without an individualized bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution. Respondents shall provide Petitioner with a bond hearing within seven (7) days. If a bond hearing cannot be provided within seven (7) days, Petitioner shall be released from detention while he awaits a bond hearing.

## I.    BACKGROUND

### A.  Factual Background

Petitioner Wilmin Vasquez-Rosario is a noncitizen from the Dominican Republic.  ECF No. 1 ¶ 24.[1]  On or about November 8, 2022, Vasquez-Rosario crossed the United States border near Calexico, California, where he voluntarily surrendered and was apprehended by the Department of Homeland Security ("DHS").  ECF No. 1-2 at 1; ECF No. 1 ¶ 2.[2]  Vasquez-Rosario remained in DHS's custody for approximately eight days.  *Id.*  On November 14, 2022, Vasquez-Rosario received a Notice to Appear for a hearing on October 2, 2024, at the Philadelphia Immigration Court.  *Id.* ¶ 4; ECF No. 1-2 at 1.  The Notice to Appear contained a box that was checked for "[y]ou are an arriving alien."  *Id.*  Thereafter, Vasquez-Rosario was paroled into the United States by means of DHS's discretionary parole authority under 8 U.S.C. § 1182(d)(5), Immigration and Nationality Act ("INA") § 212(d)(5).  ECF No. 1 ¶¶ 2, 25.  On December 22, 2023—before any removal hearing had taken place—DHS issued Vasquez-Rosario an updated Notice to Appear, which included a continuation page (Form I-862) that was "[m]ade a [p]art" of Vasquez-Rosario's Notice to Appear.  ECF No. 1-2 at 1, 4.  On the continuation page, Vasquez-Rosario was charged with removal under INA § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I).[3]  *Id.* at

---

[1] Vasquez-Rosario has one state misdemeanor criminal offense pending in connection with a DUI, for which he was offered admission to Philadelphia County's Accelerated Rehabilitative Disposition program.  ECF No. 1 ¶ 29; ECF No. 1-9.

[2] Vasquez-Rosario states that he crossed the border near Murietta, CA on or about November 14, 2022.  ECF No. 1 ¶ 2.  However, Vasquez-Rosario's Notice to Appear states that he crossed near Calexico, CA on or about November 8, 2022.  ECF No. 1-2 at 1.

[3] In full, the Notice to Appear charged Vasquez-Rosario as subject to removal under INA § 212(a)(6)(A)(i) "in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  ECF No. 1-2 at 4.  The Notice to Appear also charged Vasquez-Rosario as subject to removal under INA § 212(a)(7)(A)(i)(I) "as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border

4; ECF No. 1 ¶ 4.  The updated Notice to Appear "[s]uperseded" the previous Notice to Appear issued on November 14, 2022.  ECF No. 1-2 at 1.[4]

In December 2024, Vasquez-Rosario filed a formal Application for Asylum and for Withholding of Removal on the bases of political opinion, membership in a particular social group, and protection under the Convention Against Torture with U.S. Citizen and Immigration Services. ECF No. 1 ¶¶ 3, 27; ECF No. 1-6 at 6.

On December 31, 2025, DHS issued a Form I-200 warrant for Vasquez-Rosario's arrest. ECF No. 1 ¶ 13.  On the same day, agents of Immigration and Customs Enforcement ("ICE") detained Vasquez-Rosario in front of his home without providing him with a bond hearing or identifying any lawful statutory basis for his detention.  *Id.* ¶¶ 9, 13.  At that point, Vasquez-Rosario had been residing in the United States for over three years.

### B.  Procedural History

Vasquez-Rosario filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on December 31, 2025, in which he argues that he is being unlawfully detained without statutory authorization and in violation of the Due Process Clause under the Fifth Amendment.  *Id.* ¶ 31. Vasquez-Rosario seeks immediate release from detention or an individualized bond hearing under 8 U.S.C. § 1226(a).  *Id.*  On January 2, 2026, the Court ordered Respondents to file a brief letter response if they viewed Vasquez-Rosario's case as containing meaningfully distinguishable facts

---

crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act."  *Id.*

[4] To date, Vasquez-Rosario has still not appeared before an immigration judge for a removal hearing.  On March 4, 2024, Vasquez-Rosario received a notice for an immigration hearing that would take place on April 8, 2025, which was later cancelled by the Immigration Court.  ECF No. 1 ¶ 5; ECF No. 1-3; ECF No. 1-4.  On April 11, 2025, Vasquez-Rosario received a scheduling order with filing deadlines, but no date was set for a hearing.  *Id.* ¶ 5; ECF No. 1-5.

from prior cases with nearly identical material circumstances that have been handled by the Eastern District of Pennsylvania, such as *Cantu-Cortes v. O'Neill* (No. 25-cv-6338); *Anirudh v. McShane* (No. 25-cv-6458); and *Juarez Velazquez v. O'Neill* (No. 25-cv-6191). *See* ECF No. 2 at 2.

On January 8, 2026, Respondents filed a letter brief in response to the Petition. *See* ECF No. 6. According to Respondents, Vasquez-Rosario's case "present[s] a key factual distinction from the recent habeas petitions" because, in their view, he is "removable as an 'arriving alien' under 8 U.S.C. § 1225(a)(1) and 8 C.F.R. 1.2." *Id.* at 1. Respondents distinguished Vasquez-Rosario's case from the other cases that the Court had cited as exemplars in its Order on the basis that those petitioners were "charged as 'applicants for admission,' not 'arriving aliens' whom the government contended were subject to mandatory detention without a bond hearing under § 1225(b)(2)." *Id.*

On January 13, 2026, Vasquez-Rosario filed a Brief in Response to Respondents' Brief Letter and in Support of Petition for Writ of Habeas Corpus. ECF No. 8. The Petition is fully briefed and before this Court.

## II.    LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "'Habeas is [at its] core [a] remedy for unlawful executive detention' that is 'regularly invoked on behalf of noncitizens.'" *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025), *appeal filed* (Jan. 16, 2026), (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008); quoting *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 305 (2001)). It is Vasquez-Rosario's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). In addition, the Fifth Amendment

of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law . . . before being deported.").

## III.  DISCUSSION

This dispute centers around whether Vasquez-Rosario is subject to mandatory detention under 8 U.S.C. § 1225(b) or discretionary detention under 8 U.S.C. § 1226(a).  Vasquez-Rosario argues that he is being detained under Section 1226(a), which requires an individualized bond hearing.  *See* ECF No. 1 ¶¶ 8, 31, 46, 49, 57.  According to Vasquez-Rosario, "[t]he absence of any hearing or individualized assessment creates a substantial risk of erroneous deprivation of liberty" and violates the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 31, 70.  Respondents, on the other hand, contend that because Vasquez-Rosario is "an arriving alien in proceedings, [he] is subject to mandatory detention under § 1225(b)," and no bond hearing is required.  ECF No. 6 at 1 (citing 8 C.F.R. § 235.3(c)(1)).  For the following reasons, the Court finds that Vasquez-Rosario is subject to detention under Section 1226(a), so Respondents must afford Vasquez-Rosario a bond hearing.

### A.  Statutory Framework

At the outset, a word is warranted on the governing statutory framework.  The Court is not starting from a blank slate and is no stranger to the many habeas petitions that have been filed in the Eastern District of Pennsylvania and in other districts across the country.  In connection with the instant Petition, Respondents' argument in part turns on provisions that courts in other districts have termed the "Designation Provision" and "Arriving Alien Provision" of 8 U.S.C. § 1225(b)(1), which have not been explored in depth in this District.  *See Coalition for Humane Immigrant Rts.*

*v. Noem*, No. 25-cv-872, --- F. Supp. 3d ---, 2025 WL 2192986, at *5 (D.D.C. Aug. 1, 2025), *appeal filed* (Aug. 11, 2025). This Court finds the well-reasoned opinions from other districts analyzing Section 1225(b)(1) persuasive and thus incorporates them in large part here. *See, e.g.*, *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *21–30; *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, --- F. Supp. 3d ---, 2025 WL 3314420, at *13–25 (E.D.N.Y. Nov. 28, 2025).

### 1. *Mandatory Detention Under Section 1225(b)*

8 U.S.C. § 1225 provides the procedures by which the Government may subject certain "applicants for admission" to mandatory detention. Section 1225(a)(1) designates an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Section 1225(b) requires mandatory detention of two types of "applicants for admission." *Id.* §§ 1225(b)(1), (2).

Under Section 1225(b)(1), aliens "who satisfy two criteria may be subject to expedited removal" proceedings:

> First, those noncitizens are "inadmissible" to the United States either because they lack proper entry documents or because they engaged in fraud or willfully misrepresented a material fact on their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility). Second, those noncitizens fall into at least one of two provisions of the expedited removal statute: (1) they "[are] arriving in the United States[,]" 8 U.S.C. § 1225(b)(1)(A)(i), and thereby fall into what is known as the "Arriving Aliens Provision"; and/or (2) they "have not been admitted or paroled" into the United States and have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id.* § 1225(b)(1)(A)(iii)(II), and thereby fall into what is known as the "Designation Provision."

*Rodriguez-Acurio*, 2025 WL 3314420, at *9 (citing *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020); citing *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *5).   In other words, "Section 1225(b)(1) governs noncitizens: (1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; *and* (2) who fall within either the 'Arriving Aliens Provision' or the 'Designation Provision.'"   *Id.* at *10 (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)).   If the alien is deemed inadmissible and does not demonstrate an intent to apply for asylum or indicate "a fear of prosecution or torture or fear of returning to their country of origin, the officer issues a Notice and Order of Expedited Removal."   *Id.* at *9.   Aliens who are placed in expedited removal proceedings under Section 1225(b)(1) are subject to mandatory detention.   *See* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum."); *see also id.* § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

Section 1225(b)(2) provides for "[i]nspection of other aliens": subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title."   *Id.* § 1225(b)(2)(A).   Section 1225(b)(2) covers, for example:

> noncitizens who are arriving in the United States, seeking admission, and are inadmissible for some reason other than misrepresentation or failure to meet document requirements (such as those having certain types of criminal convictions or those who would pose a foreign policy risk or are associated with terrorists, the Communist party, or Nazi activity).

*Rodriguez-Acurio*, 2025 WL 3314420, at *11 (quoting *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 929 (N.D. Cal. 2025), *appeal filed* (Nov. 26, 2025)).  The "plain meaning" of Section 1225(b)(1)(B)(ii) and Section 1225(b)(2) "is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).  With the exception of discretionary parole under Section 1182(d)(5)(A), "there are no other circumstances under which aliens detained under [Section] 1225(b) may be released." *Id.* at 300 (emphasis omitted).

### 2. Discretionary Detention Under Section 1226

In contrast, "[8 U.S.C.] § 1226 applies to aliens *already present in the United States*." *Id.* at 303 (emphasis added).  Section 1226 "distinguishes between two different categories of aliens" who may be subject to detention under this provision. *Id.* at 288.  First, under Section 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  The Attorney General may (1) "continue to detain the arrested alien;" or (2) "release the alien" pursuant to a "bond" or "conditional parole." *Id.* §§ 1226(a)(1)–(2).  Second, Section 1226(c) "carves out a statutory category of aliens who may *not* be released" on a bond or conditional parole. *Jennings*, 583 U.S. at 289.

### B.  Vasquez-Rosario Is Being Detained Under Section 1226(a)

Respondents argue that Vasquez-Rosario's case is different from cases such as *Cantu-Cortes v. O'Neill* (No. 25-cv-6338); *Anirudh v. McShane* (No. 25-cv-6458); and *Juarez Velazquez v. O'Neill* (No. 25-cv-6191), because those cases "involved aliens who are charged as 'applicants for admission,' not 'arriving aliens.'" ECF No. 6 at 1.  While Respondents do not expressly state

where they are deriving this distinction from, the Court assumes that Respondents are referring to the boxes that are checked on Notices to Appear. *See* ECF No. 1-2 at 1. In Vasquez-Rosario's case, the box on his Notice to Appear is checked for "[y]ou are an arriving alien":

☒ You are an arriving alien.
☐ You are an alien present in the United States who has not been admitted or paroled.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

*Id.* For Mr. Cantu-Cortes, and Mr. Anirudh, the box that was checked on their Notices to Appear was "[y]ou are an alien present in the United States who has not been admitted or paroled." *Cantu-Cortes*, No. 25-cv-6338, ECF No. 1-1 at 2; *Anirudh*, No. 25-cv-6458, ECF No. 1-6 at 1.[5] Respondents point to this distinction in an effort to rely on the definition of "arriving alien" located in 8 C.F.R. § 1.2,[6] and further contend that because Vasquez-Rosario is "an arriving alien in proceedings, [he] is subject to mandatory detention under § 1225(b)." ECF No. 6 at 1.

But Respondents' distinction is untenable based on the underlying charging document, statutory language, and weight of authority holding against them in this District and other districts across the country. *See, e.g.*, *Demirel*, 2025 WL 3218243, at *5–13 (appendix of 288 cases).

    *1. Vasquez-Rosario's Notice to Appear*

The Court starts with Vasquez-Rosario's Notice to Appear. ECF No. 1-2. On November 14, 2022, Vasquez-Rosario received a Notice to Appear with a box that was checked for "[y]ou

---

[5] There is no Notice to Appear in the record for Mr. Juarez Velasquez. *Juarez Velasquez*, No. 25-cv-6191 (E.D. Pa.).

[6] That regulation defines "arriving alien" as "an applicant for admission *coming or attempting to come into the United States* at a port-of-entry, or an alien seeking transit through the United States, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2 (emphasis added).

are an arriving alien." *Id.* at 1.  After Vasquez-Rosario had been paroled under DHS's discretionary authority, on December 22, 2023, he was issued an updated Notice to Appear with a continuation page that was "[m]ade a [p]art" of the Notice to Appear and that "[s]upersede[d] the Notice to Appear issued on November 14, 2022." *Id.* at 1, 4.  Importantly, the continuation page charged Vasquez-Rosario under INA § 212(a)(6)(A)(i), "in that [Vasquez-Rosario is] an alien *present in the United States* without being admitted or paroled, or *who arrived in the United States* at any time or place other than as designated by the Attorney General." *Id.* at 4 (emphasis added). In other words, by December 22, 2023, Vasquez-Rosario had been "present in the United States" for over one year and/or had "arrived in the United States" one year before.  Therefore, by DHS's own determination, Vasquez-Rosario's position had been superseded: he was now considered either (1) "an alien present in the United States who has not been admitted or paroled"—i.e., in the same position as if the second box on the Notice to Appear had been checked—or (2) an alien "who arrived in the United States." *Id.*  Accordingly, as of at least December 22, 2023 (if not earlier), Vasquez-Rosario was no longer an "arriving alien" in DHS's eyes.

In addition to being charged under INA § 212(a)(6)(A)(i), Vasquez-Rosario was also charged as inadmissible and subject to removal pursuant to INA § 212(a)(7)(A)(i)(I) for lack of proper entry documentation, such as a passport or immigrant visa. *Id.*

When combined, Vasquez-Rosario's two charges appear to have the effect of placing him in the category of applicants for admission under the "Designation Provision" of Section 1225(b)(1)(A)(i). *Rodriguez-Acurio*, 2025 WL 3314420, at *9.  That is, on December 22, 2023, DHS made a determination that Vasquez-Rosario was an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown" that he "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the

determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Therefore, under Section 1225(b)(1)(A)(i), DHS appears to have made a determination that Vasquez-Rosario was "an alien . . . who . . . is described in clause (iii)," and who is "inadmissible under section . . . 1182(a)(7)." *Id.* § 1225(b)(1)(A)(i). Under this statutory provision, the immigration "officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* If the "alien indicates either an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii).

DHS appeared to categorize Vasquez-Rosario as subject to expedited removal under Section 1225(b)(1)(A)(i) over one year after he had already been paroled by means of DHS's discretionary authority under 8 U.S.C. § 1182(d)(5). But rather than removing Vasquez-Rosario "from the United States without further hearing or review" in an expedited fashion, *id.* § 1225(b)(1)(A)(i), DHS issued him an updated Notice to Appear containing a hearing date of October 2, 2024 at 8:30 a.m. ECF No. 1-2 at 1. DHS thus never treated Vasquez-Rosario as if he were subject to expedited removal proceedings.

Moreover, the specific type of form that Vasquez-Rosario was issued provides further evidence as to how DHS viewed Vasquez-Rosario. Vasquez-Rosario was issued a "Notice to Appear" on *Form I-862*, which subjected Vasquez-Rosario to "removal proceedings under Section 240 of the Immigration and Nationality Act." *Id.* at 1, 4. Notably, DHS has a separate form, a "Notice and Order of Expedited Removal" on *Form I-860*, for aliens that are subject to expedited removal proceedings under "section 235(b)(1) of the Immigration and Nationality Act." *Compare* U.S. Dep't of Homeland Sec., Notice and Order of Expedited Removal (Form I-860), https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf, *with* ECF No. 1-2; *see also*

*Rodriguez-Acurio*, 2025 WL 3314420, at *8–9 (describing the difference between Section 240 removal proceedings and expedited removal proceedings under 8 U.S.C. § 1225(b)(1)).  Therefore, from November 14, 2022 up until his arrest on December 31, 2025, DHS did not treat Vasquez-Rosario as if he were subject to mandatory detention and expedited removal proceedings.  *See Rodriguez-Acurio*, 2025 WL 3314420, at *21 ("In effect, 'when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a.'" (quoting *Aviles-Mena v. Kaiser*, No. 25-cv-6783, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025), *appeal filed* (Nov. 5, 2025)).

Contrary to Respondents' argument, Vasquez-Rosario is properly considered an "applicant for admission," rather than an "arriving alien," based on his superseding Notice to Appear.  This case is thus not meaningfully different from many of the habeas petitions that have been filed in the Eastern District of Pennsylvania.  *See, e.g.*, *Cantu-Cortes v. O'Neill* (No. 25-cv-6338); *Anirudh v. McShane* (No. 25-cv-6458); *Juarez Velazquez v. O'Neill* (No. 25-cv-6191).  Having reviewed Vasquez-Rosario's charging document, the Court now turns to the statutory provisions.

### 2. *Vasquez-Rosario Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1)*

As explained above, DHS appears to have charged Vasquez-Rosario as subject to removal under Section 1225(b)(1)(A)(i) through the Designation Provision (8 U.S.C. § 1225(b)(1)(A)(iii)(II)).  Respondents argue that, "[a]s an arriving alien in proceedings, Vasquez-Rosario is subject to mandatory detention under § 1225(b)."  ECF No. 6 at 1; *see also id.* (arguing Vasquez-Rosario is an "inadmissible arriving alien").  Respondents are imprecise though as to whether their position is that Vasquez-Rosario is subject to mandatory detention under Section 1225(b)(1) or 1225(b)(2).  They cite at various points to both provisions in their letter brief without

ever stating directly which provision they believe Vasquez-Rosario is being detained under. However, Respondents analogize Vasquez-Rosario's case to *Contreras v. Oddo*, No. 25-cv-162, 2025 WL 2104428 (W.D. Pa. July 28, 2025), *see* ECF No. 6 at 2–3, and thus appear to primarily invoke Section 1225(b)(1), which governs expedited removal proceedings, as the basis for Vasquez-Rosario's mandatory detention.  The Court will start there.

Notwithstanding DHS's charging determination, this Court joins in the holdings of other courts across the country that "neither the Arriving Aliens Provision nor the Designation Provision of Section 1225(b)(1) authorizes expedited removal and the detention of noncitizens, who like [Vasquez-Rosario], were paroled into the United States under Section 1182(d)(5)(A)." *Rodriguez-Acurio*, 2025 WL 3314420, at *14 (citing cases).

    a.  The "Designation Provision" of Section 1225(b)(1)(A)(iii)(II) Does Not Apply to Vasquez-Rosario

While Respondents do not expressly address whether the Designation Provision imposes mandatory detention on Vasquez-Rosario, because DHS appeared to determine that Vasquez-Rosario was inadmissible and removable pursuant to this provision, the Court addresses this provision first.

As explained above, Section 1225(b)(1)(A)(iii)(II) allows the Attorney General to designate for expedited removal an alien

> who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . .

8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Vasquez-Rosario arrived at the United States border on or about November 8, 2022, and thus was not continuously "physically present in the United States" for two years when DHS made

13

its inadmissibility determination on December 22, 2023.  *Id.*; *see also* ECF No. 1-2 at 1, 4. Therefore, "the critical question" for this Court "is whether the Designation Provision authorizes expedited removal of [Vasquez-Rosario], and thereby mandatory detention, when [he] was previously 'paroled into the United States'" and has resided here for over three years before his arrest. *Rodriguez-Acurio*, 2025 WL 3314420, at *14.

This question turns on the meaning of "who has not been . . . paroled into the United States" in Section 1225(b)(1)(A)(iii)(II).  *Id.* at *15.  Respondents concede that Vasquez-Rosario "may previously have been paroled into the United States," but contend that his parole was revoked and that, without parole, he is subject to mandatory detention.  ECF No. 6 at 3.  As the *Rodriguez-Acurio* court explained,

> the statutory text does not read that a noncitizen is eligible for expedited removal if that person "*is* not currently on parole."  Instead, it ties the ability to be designated for expedited removal to whether the noncitizen "has not *been* . . . paroled," leaving open the possibility that "whether a noncitizen's parole is active, or has expired or been terminated, does not matter."

2025 WL 3314420, at *15 (quoting *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *22); *see also Hewitt v. United States*, 606 U.S. 419, 427 (2025) (explaining that Congress' decision to "employ[] the present-perfect tense—thereby requiring evaluation of whether 'a sentence . . . *has* . . . been imposed'" was a "distinction [that] makes a difference" when construing statutes).

After conducting a thorough analysis of the statutory text, adjacent statutory language, context, and arguments, the *Coalition for Humane Immigrant Rights* court held that "the Designation Provision forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States."  2025 WL 2192986, at *22; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *15 (reaching the same conclusion); *Qasemi v. Francis*, No. 25-cv-10029,

14

2025 WL 3654098, at *9, *11 (S.D.N.Y. Dec. 17, 2025) (same) (citing cases); *Salgado Bustos v. Raycraft*, No. 25-cv-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (same); *Munoz Materano v. Arteta*, No. 25-cv-6137, --- F. Supp. 3d ---, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025) (same); *Aviles-Mena*, 2025 WL 2578215, at *4 (same).[7]  This Court agrees with and joins *Coalition for Humane Immigrant Rights*, and other district courts, in holding that the Designation Provision does not authorize mandatory detention of aliens who have been paroled into the United States for years.

Respondents also invoke 8 U.S.C. § 1182(d)(5)(A), which provides that

> when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A); *see also* ECF No. 6 at 3.  But as the *Coalition for Humane Immigrant Rights* court explained, that provision means only that "the noncitizen is physically brought back into immigration detention ('custody') and then legally continues to be treated as an 'applicant for admission', because his parole itself did not constitute an admission."  2025 WL 2192986, at *24. There, that court rejected Respondents' position that under Section 1182(d)(5)(A), "parolees return, upon the termination or expiration of their parole, to the position of an applicant for admission standing at the threshold of entry."  *Id.* (internal quotations and citations omitted); *see also Salgado Bustos*, 2025 WL 3022294, at *6 (explaining that "[n]umerous courts have rejected Respondents' interpretation of [8 U.S.C. § 1182(d)(5)(A)]" as meaning "that the expired parole

---

[7] Respondents rely on *Contreras v. Oddo*, No. 25-cv-162, 2025 WL 2104428 (W.D. Pa. July 28, 2025), *see* ECF No. 6 at 2–3, but Contreras appears to have been charged only pursuant to INA § 212(a)(7)(A)(i)(I).  *See Contreras*, 2025 WL 2104428, at *4.  Moreover, the Government had placed Contreras in expedited removal proceedings prior to a determination that he had a credible fear of persecution, *id.* at *2, whereas Vasquez-Rosario has never been treated as if he were subject to expedited removal before his December 31, 2025 arrest by ICE agents.

has no effect on the original charges of removability against him"). Instead, "Section 1182(d)(5)(a) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Qasemi*, 2025 WL 3654098, at *11 (internal quotations and citations omitted); *see also Rodriguez-Acurio*, 2025 WL 3314420, at *18 ("[A]ny other applicant for admission residing in the United States for more than three years would be detained under Section 1226").

> b. The "Arriving Alien Provision" of Section 1225(b)(1)(A)(i) Does Not Apply to Vasquez-Rosario

As explained above, the Court finds that Vasquez-Rosario is properly considered an "applicant for admission," rather than an "arriving alien," based on the superseding Notice to Appear. Nevertheless, given Respondents' focus on the "arriving alien" terminology, the Court briefly addresses whether the "Arriving Alien Provision" applies as well. Again, the Court finds the reasoning in *Coalition for Humane Immigrants Rights* and *Rodriguez-Acurio* persuasive and joins in their analysis.

The Arriving Alien Provision requires "expedited removal and detention of any noncitizen who is inadmissible due to lack of entry documents or fraud or willful misrepresentation on an admission application *and* 'who is arriving in the United States.'" *Rodriguez-Acurio*, 2025 WL 3314420, at *19 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). The INA "does not define the term 'arriving,'" *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *27, so Respondents primarily rely on the definition of "arriving alien" in 8 C.F.R. § 1.2, *see supra* at 9 n.6, even though that phrase does not appear anywhere in Section 1225(b)(1)(A)(i). ECF No. 6 at 2.

The Third Circuit has not considered the meaning of "arriving alien" and any connection it may have to 8 U.S.C. § 1225(b)(1)(A)(i) since the Supreme Court's decision in *Loper Bright*

*Enterprises v. Raimondo*, 603 U.S. 369 (2024), under which district courts "must exercise independent judgment in determining the meaning of statutory provisions," rather than deferring to agencies' interpretations. 603 U.S. at 394; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *20.[8] As other district courts have recently found, "the plain meaning of the word 'arriving' is being 'in the process of reaching' a destination." *Id.* (quoting *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *28). The terms "'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival." *Id.* (quoting *Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *27). An "arriving alien" is thus a person "who is in the process of reaching the United States." *Id.*; *see also Coalition for Humane Immigrant Rts.*, 2025 WL 2192986, at *28 (explaining that "arriving" "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time.").

---

[8] The Third Circuit previously found in *Zheng v. Gonzalez*, that the term "arriving alien" within 8 C.F.R. § 1245.1(c)(8) and 8 C.F.R. § 1.1(q) (a precursor to 8 C.F.R. § 1.2), could extend to "aliens who were paroled after their arrival." 422 F.3d 98, 110 (3d Cir. 2005); *see also Iredia v. Att'y Gen. of U.S.*, 25 F.4th 193, 195–96 (3d Cir. 2022) (citing *Zheng* in connection with review of a final order of removal for a petitioner who was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) after he had overstayed parole). However, *Zheng* dealt with an application to adjust status with the Immigration and Naturalization Service, rather than mandatory detention in advance of removal, and petitioner was only charged under Section 1182(a)(7)(A)(i)(I), not under Section 1182(a)(6)(A)(i). 422 F.3d at 104, 121. Here, Vasquez-Rosario was charged under both provisions, including as an alien "present in the United States" or "who arrived in the United States." ECF No. 1-2 at 4 (citing INA § 212(a)(6)(A)(i)). Vasquez-Rosario was thus charged as an "applicant for admission," contrary to the Government's contention that he falls into a separate "arriving alien" category that authorizes mandatory detention at any time. *See* ECF No. 6 at 1 (stating that other habeas petitions in this District involved aliens "charged as 'applicants for admission,' not 'arriving aliens' whom the government contended were subject to mandatory detention without a bond hearing under § 1225(b)(2)").

Applying the plain meaning of "arriving" as used within Section 1225(b)(1)(A)(i), Vasquez-Rosario can no longer be considered an alien "who is arriving in the United States," even though he may have initially been classified as an "arriving alien" in November 2022.  8 U.S.C. § 1225(b)(1)(A)(i); *see also Rodriguez-Acurio*, 2025 WL 3314420, at *21.  At the time of Vasquez-Rosario's arrest outside of his home in Philadelphia on December 31, 2025, he was not "in the process of 'arriving' in the United States."  *Id.*  To the contrary, he had been residing here for over three years, "gainfully employed," "regularly attending service at the Feltonville Seventh-day Adventist Church in Philadelphia," "building community ties," and involved in the asylum process.  ECF No. 1 ¶ 74; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *21 (finding that a petitioner was not still "in the process of 'arriving' in the United States" after she had lived there for over four years); *Salgado Bustos*, 2025 WL 3022294, at *5 (agreeing that a petitioner "was no longer an 'arriving alien' for purposes of § 1225(b)(1)(A)(i)" because he "had been living in the United States, far from the southern border, for almost three years"); *Qasemi*, 2025 WL 3654098, at *6 ("It would try any plain understanding of the term arrival to classify an individual like [the petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien.").   And this understanding of the term "arriving" comports with DHS's decision to charge Vasquez-Rosario as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  ECF No. 1-2 at 4.  Accordingly, Vasquez-Rosario is not subject to mandatory detention under Section 1225(b)(1)(A)(i).

3.  *Vasquez-Rosario Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2)*

Because Respondents also "incorporate the arguments" made in other cases discussing detention under Section 1225(b)(2), *see* ECF No. 6 at 3, the Court next addresses whether Vasquez-Rosario is being detained pursuant to that section.

An "applicant for admission" may be subject to detention under Section 1225(b)(2)(A) if the individual is found to be "seeking admission" to the United States.  *See* 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 297 ("§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute).").  While "seeking admission" is not defined by the statute or the INA, this Court previously explained that an alien who has been living in the United States for several years "cannot be characterized as 'seeking entry' consistent with the ordinary meaning of that phrase." *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025), *appeal filed* (Jan. 12, 2026), (quoting *Vasquez v. Feeley*, No. 25-cv-1542, 2025 WL 2676082, at *13 (D. Nev. Sept. 17, 2025)). The Court also incorporates the thorough, well-reasoned decisions that other judges in this District have since issued, who have similarly defined "seeking admission" as meaning "physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization."  *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025), *appeal filed* (Jan. 12, 2026); *see also Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *4–8 (E.D. Pa. Nov. 25, 2025), *appeal filed* (Jan. 22, 2026); *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *4–8 (E.D. Pa. Nov. 19, 2025), *appeal filed* (Jan. 16, 2026); *Demirel*, 2025 WL 3218243, at *4–5.  Once again, the Court concludes that Section 1225(b)(2)(A) only applies to "noncitizens who are just arriving or have recently arrived in the country," *Ndiaye*, 2025 WL 3229307, at *5, and

19

"does not apply to individuals . . . who have already entered and resided in the United States for an extended period." *Kashranov*, 2025 WL 3188399, at \*7.

While Vasquez-Rosario was at one point in time "seeking admission" to the United States at the border, he has already entered and resided in the United States for over three years, and thereby is no longer "seeking admission" consistent with Section 1225(b)(2)(A). *See* ECF No. 1 ¶ 2; *see also Kourouma v. Jamison*, No. 26-cv-182, 2026 WL 120208, at \*4 (E.D. Pa. Jan. 15, 2026) ("When an applicant for admission is apprehended after being present in the United States for years, like Petitioner here, they are not actively seeking admission at the time of their arrest, so Section 1225(b)(2) does not govern their detention." (internal quotations and citations omitted)). Vasquez-Rosario is thus not subject to mandatory detention under Section 1225(b)(2)(A).

### 4. *Vasquez-Rosario Is Subject to Discretionary Detention Under 8 U.S.C. § 1226(a)*

For the reasons discussed above, Vasquez-Rosario is not subject to detention under either Section 1225(b)(1) or Section 1225(b)(2). Accordingly, his detention is discretionary and governed by Section 1226(a), which "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303; *id.* at 289 (Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."). Section 1226(a) provides discretionary authority to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General" "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

This is what occurred here: after living in the United States for over three years, DHS issued a Form I-200 "Warrant for Arrest of Alien" on December 31, 2025 for Vasquez-Rosario's arrest. *See* ECF No. 1 ¶ 13; *see also* U.S. Dep't of Homeland Sec., Warrant for Arrest of Alien (Form I-200), https://www.ice.gov/sites/default/files/documents/Document/2017/I-

200_SAMPLE.PDF.  A Form I-200 warrant states that an immigration officer issued the warrant "pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations."  *Id.*  "[S]ection[] 236 . . . of the Immigration [and] Nationality Act, [] is Section 1226," and, "as Section 1226 contemplates, the warrant provides for his detention pending the outcome of his removal proceedings (and asylum application)."  *Kashranov*, 2025 WL 3188399, at *5 (internal quotations and citations omitted); *see also Anirudh v. McShane*, No. 25-cv-6458, 2025 WL 3527528, at *5 (E.D. Pa. Dec. 9, 2025); *Rodriguez-Acurio*, 2025 WL 3314420, at *24 ("Those sections [on the Form I-200] correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1–287.12," which "supports the conclusion that her detention is governed by Section 1226(a)'s discretionary framework."); *J.U. v. Maldonado*, No. 25-cv-4836, --- F. Supp. 3d. ---, 2025 WL 2772765, at *6 (E.D.N.Y. Sept. 29, 2025) ("§ 1225(b) contains no warrant requirement . . . [t]hus, the use of a warrant in March 2024 to arrest and detain Petitioner is further evidence that Petitioner could only be detained pursuant to § 1226(a).").

Under these circumstances, Vasquez-Rosario is being detained pursuant to Section 1226(a).  When an alien is detained under Section 1226(a), "the alien has due process rights, including a right to an individualized detention determination and a bond hearing."  *Kashranov*, 2025 WL 3188399, at *5.  Respondents' detention of Vasquez-Rosario without an individualized bond hearing thus violates the INA and his due process rights under the Fifth Amendment of the Constitution.  *See, e.g.*, *id.* ("The *Mathews* factors . . . indicate that due process compels a pre-deprivation bond hearing."); *Kumar v. McShane*, No. 25-cv-6238, 2025 WL 3722005, at *7 (E.D. Pa. Dec. 23, 2025).

IV.    **CONCLUSION**

For the foregoing reasons, the Court finds that Vasquez-Rosario is subject to discretionary detention under 8 § U.S.C. 1226(a), not mandatory detention under 8 U.S.C. § 1225(b). Accordingly, the Court will grant the Petition.  Respondents shall provide Vasquez-Rosario with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven (7) days.  If Respondents are unable to provide Vasquez-Rosario with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days, Respondents shall immediately release Vasquez-Rosario from detention while he awaits a bond hearing.  An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**